Kibambe Mwendapeke v. Merrick Garland, it's appeal number 22-2383 Kibambe Mwendapeke v. Merrick Garland Kibambe Mwendapeke v. Merrick Garland, it's appeal number 22-2383. Hello Mr. Butcher, how are you? I'm doing well, how are you? Fine, thank you. Anytime you're ready. Thank you. May it please the court. My name is Brantley Butcher, and I'm a student attorney representing the petitioner Kibambe Mwendapeke. Mr. Mwendapeke asked this court to hold that complicity to robbery in the first degree in Kentucky is not a crime of violence under the categorical approach. Complicity to robbery in the first degree in Kentucky is overbroad for three main reasons. First, the robbery in the first degree statute, as written and as applied, lacks a sufficient mens rea attached to the force element. Without a sufficient mens rea attached to the force element, robbery in the first degree cannot be a crime of violence. Second, a defendant in Kentucky can be convicted of robbery by posing only an abstract or atmospheric threat. The Supreme Court in United States v. Taylor in 2022 held that threats must be communicative, not abstract, to constitute a crime of violence. Third, Kentucky's complicity statute creates accomplice liability from inaction. Kentucky's complicity statute is thus overbroad because it does not comply with the active employment of force requirement set out in Layocal v. Ashcraft, and because it is broader than the generic definition. Now, one's status as an accomplice or a principal is not an element of a criminal offense under Kentucky law. So precisely where in the categorical analysis does that come into play? I'm sorry, Your Honor, can you clarify? My understanding is that in Kentucky, one's status as an accomplice or a principal is not an element of a criminal offense. So I wondered where you think the categorical analysis, where would that come into play here? Yes, Your Honor. So I think the categorical analysis has to go down two paths. First, it has to look at the principal crime, and it also has to look at the complicity conviction itself in the state. Mr. Winnipecke was convicted under Kentucky's complicity statute. It's found in the charging documents. And the complicity statute under Duenas-Alvarez on page 191, it states that there are special circumstances where a state complicity statute may be broader than the generic definition. In these cases, the state complicity statute can be overbroad because the generic crime is no longer the generic crime. We see this because Kentucky's complicity statute does not comply with LAOCAL's active employment of force requirement and because it's broader than the generic definition. I'd like to begin by going into greater depth on my first argument that Kentucky's robbery in the first degree is not a crime of violence because it lacks the requisite mens rea for its force element. Excuse me, Mr. Butcher. A couple of quick questions before you get there. When this petition for review was filed, as I understand it, the petitioner had a motion for reconsideration pending before the BIA. Yes, Your Honor. And that has since been denied, is that right? Yes, Your Honor. Is there a separate petition for review of that denial? No, Your Honor. In that motion to reconsider, we made arguments based on Taylor that we then conceded in our reply brief. Thank you. So the Kentucky robbery in the first degree statute reads, a person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft. The text of the statute only designates one mens rea, and that is the intent to accomplish the theft. The statute does not connect the sole mens rea, intent, to the use of force. What about that use of the word with, though? How does that not modify the force element? Yes, Your Honor. So in the Kentucky Supreme Court's case, Hobson v. Commonwealth, the Kentucky Supreme Court interpreted with to mean concurrently. So it's the use of force concurrently with an intent to accomplish theft. In this breakdown between the use of force element and the intent to commit theft element is seen in the Supreme Court case, in the Kentucky Supreme Court case, Slavin v. Commonwealth. In this case, the Kentucky Supreme Court stated that robbery has two discrete elements. One is the use of force, and two is the intent to commit theft. The Supreme Court of Kentucky then went on to say that should the intent to commit theft disappear, the crime would no longer be robbery. Instead, the crime would be wanton endangerment because only the force element would remain. Wanton in Kentucky is an equivalent mens rea to recklessness, and the Supreme Court and Board of the United States held that recklessness was not a sufficient mens rea to constitute a crime of violence. So because a defendant in Kentucky could be convicted of robbery with a mens rea of recklessness for the force element, robbery in the first degree cannot be a crime of violence. Mr. Butcher, I'd like to give you a moment to speak to this Sixth Circuit case that came down last year, United States v. Williams, Tyler Williams. What are your thoughts on that case? Yes, Your Honor. So we have three main reasons why we find Williams to be unpersuasive. So first, the Sixth Circuit in Williams incorrectly interpreted Slavin and the Kentucky robbery statutes. Second, the Sixth and Seventh Circuit have different standards for the categorical reproach. The Sixth Circuit requires a litigant to bring forward a case to show a realistic probability of overbreath, whereas the Seventh Circuit permits a litigant to show overbreath on its face. And then third, Williams did not consider Taylor. United States v. Taylor was decided about two weeks after Williams came out, and so United States v. Taylor was likely not briefed in Williams. Did Taylor in 2022 address any questions of accomplice liability? It did not, Your Honor. Taylor dealt with attempted crimes. Right. But we think that Taylor's analysis, especially its second half related to communicative threats, is relevant in our case. So the Taylor court separated out threats into two broad categories. One is communicative, which is an active threat where the threatener intends to communicate a threat to the threatened. The second is abstract threats, and those are situations where the situation poses an objective risk to the bystanders and victims, but there is no communicative threat from the threatener to the threatened. Kentucky courts routinely convict defendants for making only abstract threats during robbery. One example is Birdsong v. Commonwealth. In this case, the Supreme Court of Kentucky found that a threat was present because it was not unreasonable for the jury to conclude Birdsong expressed an intention to inflict pain or injury or that his behavior indicated danger or harm. The second part of that statement, behavior indicating danger or harm, is definitionally an abstract threat. Additionally, the Supreme Court of Kentucky stated it is clear from the Taylor's testimony that they were afraid of Birdsong and that they regarded him as a possible danger. The Supreme Court of Kentucky did not look to see whether a threat was communicated from Birdsong to the Taylors. It merely looked to see whether there was fear. And in both abstract threat cases and communicative threat cases, there's going to be fear on the part of the victims. I see my time is about to run out, so it's getting close. It's okay. I would like to stay for my rebuttal. That's fine. That's fine. We'll give you whatever you asked for your rebuttal. That may be a rare experience in your legal career. Hi, Mr. Newell. How are you? Good morning. Were you here for the last two cases? For one of them, yes. Uh-huh. Okay. Well, because in contrast to the previous two cases we just heard, I didn't even give you a chance to introduce yourself. Introduce yourself. Sorry. Good afternoon. May it please the court, my name is Craig Newell, and I'm here on behalf of the Attorney General. Okay. Now, in contrast to the last two cases, what we're focusing on here is whether a state offense is a match, not for an expressly enumerated offense, but rather one that satisfies the force clause of 18 U.S.C. 16a. Do you think that makes any difference to our analysis? I think it does. Yes, it does, Your Honor. It's because – so to determine how to do the categorical approach, the way we do it is dependent on the language there in the statute. So here, with the crime of violence, aggravated felony grounds, it's asking us to match Mr. Mwende's – Mwende Pekwe's conviction to whether it is an offense that has as an element the use, attempted use, or threatened use of force. So we are just looking to see if that one element is present or absent. If it's present, we've got a match, and if it's absent, we don't. It is different than enumerated grounds. It is even – it's different than the generic offenses listed in the aggravated felony provision, like the theft offense that was involved in Duenas-Alvarez or in that Alfred Ninth Circuit case where the court has to create a generic definition with generic elements to match. Maybe in that circumstance, you also need to create a generic accomplice liability and make a match. I'm not even conceding that that is not the point. I mean that that doesn't have to be done even there, but with respect to our situation, we're only looking for this one element. And that one element is here. It is because that complicity conviction under Kentucky law requires proof of the completed principal offense. So it requires proof of the completed robbery here. So if that robbery has the use or threatened use of force, then that element is subsumed into the complicity conviction. It's what this court said in Worthen that you're guilty – an accomplice is guilty of the elements of the principal offense itself. And so that's why we can get to that outcome here without getting into maybe the more confusing situation where you're having an enumerated offense with generic elements. So to move on to why Kentucky robbery is itself a crime of violence and has that physical force element, Mr. Mwendepeke raises two arguments with respect to the mens rea and the abstract threat claim. With respect to the mens rea, the statutory language, the Kentucky legislature's commentary about that statutory language and the case law indicate that that use of force or that threat is being done with this specific intent. That shows an active employment of force. That is what the Supreme Court is requiring. For instance, that Slavin decision that's relied on heavily on the other side. Slavin does say there's two elements, but it's not these discrete separate elements. It says that it needs to force with – it says, number one, force with, number two, the intent to accomplish that. If they're not connected, if that force is not being done with that specific intent, then you just don't have a robbery. And that's supported by the Hopson decision that says it has to be contemporaneous. And then if you look to things, the statutory language, that shows the connection between the force and that mens rea clause with the preposition with. And the commentary, that says, and that makes it clear what's going on. It says an offender must have intended with his use or threatened use of force to accomplish that. That shows that that is satisfied here. Regarding the abstract threat claim, now in Taylor – this is the Supreme Court 2022 case. What Taylor was saying is the crime of violence, this provision, it doesn't encompass statutes that are talking about predictive, these abstract threats. That is far removed from what we have here. Those statutes are – and Taylor lists some of them. They come in the immigration context. In admissibility grounds it says whether you're a threat to national security or whether because of a disease you may have you're a threat to the health of the community. Or like you can't pass a background investigation if you're a threat to the community. Those are trying to judge whether you may be a threat at any given time against any given person. But here we have a situation where we're talking about a specific person making a threat, whether expressed or implied, towards another specific person. We have that directed action that the Supreme Court is looking for in Taylor. What Ms. Rwanda Peckway relies on is dissenting judges' view of what the majority decision in Tunstall and Birdsong are saying. But what those decisions – they always reference that we're talking about an implied threat. When you're implying something, you're necessarily conveying a message towards someone else in an indirect manner. Wearing a mask, being hostile towards another person, throwing a printer down right near them, you're highly suggesting to them that you'll do the same. You'll use that same force against them. What the dissenting judges are ignoring is that in Birdsong, it's said that the perception, the victim's testimony of his or her perception of whether he viewed these actions as threats, that's just one factor. It's not a positive factor. You take that into consideration with the rest of the evidence to determine whether someone is implying a threat. For those reasons, Kentucky robbery itself is a crime of violence. Mr. Newell, could I take you back to the question of complicity for robbery? What do you think we have – as I understand it, Kentucky case law to the effect that inaction can amount to complicity if the person has a legal duty to act. How do you suggest we handle that? I suggest we handle that in two ways. The first way is that the fact that Kentucky complicity covers that doesn't negate the fact that Kentucky complicity, no matter which way you do it, always requires that completed principle offense. So if that completed principle offense involved the use or threatened use of force, you have that because all you're looking for is does this offense that you were convicted of contain as an element the use or attempted use or threatened use of force. Does the inaction require something greater than recklessness? Does the inaction – well, no, because Kentucky, the accomplice needs to either have the specific intent to facilitate the crime through that mission of failure to follow through on their duty to act. So that's a specific intent. Or have the intent of the actual principle offense, which here is a specific intent to accomplish a theft through your use of force. And the last point, even if this court were to say, okay, we need to, in addition to making a categorical comparison with the robbery substantive offense itself, but make a categorical comparison with some generic accomplice liability. Accomplice liability includes omissions when you have a duty – you have a legal duty to act. That is – so the – Mr. Mwandepeke cites the Rosemond decision. But the omission must be intentional? Yes. Okay. Yes, and the only other point is that the Rosemond decision of the Supreme Court that lays out just a basic what are the elements of aiding and abetting for the federal and under common law. It relies primarily on Professor Wayne Lefebvre's treatise, and his treatise clearly states that aiding and abetting can be done when you have failed to act when you have that duty to act. Thank you. Thank you, Your Honors. I appreciate your time. Thank you. Thank you, Mr. Newell. Let's put another minute on that clock, please. Thank you. Thank you, Your Honor. I want to address two main points in my rebuttal. First, I want to go back to the government's argument related to inaction and the complicity offense. So I want to return to Duenas-Alvarez, which on page 191 made clear that some aiding and abetting state statutes can be so broad that a conviction under them cannot be the principal generic crime. The Kentucky complicity statute, because it creates accomplice liability through inaction, is one of these circumstances, because it does not comply with the active employment of force requirement set out in LAOCAL for a crime of violence, and because it is broader than the generic definition. We see this court in the recent case United States v. Gamez, which we submitted in our 28J letter, perform a categorical approach analysis on the state complicity statute at question in that case. We're asking to do the same thing here, but unlike in Gamez, the Kentucky complicity statute does not comply and is so broad that it does not comply with the active engagement requirement and thus cannot be a crime of violence for one who is convicted under the statute. Second, I'd like to turn to the government's use of Hobson. So the government also uses Hobson to show that the robbery in the first degree statute requires force with the same mens rea as the intent element. This is just not the case. Because of Hobson's statement that with is equivalent to concurrently, there are many circumstances where it's possible for the defendant to commit a crime with an intent to commit force and then recklessly or negligently use force. So, for example, if a defendant were to intend to rob someone, commit the robbery, but then run into someone as they were making their escape, that could be a reckless or negligent use of force, and that would comply with how the Supreme Court of Kentucky has interpreted Hobson and the robbery statute. If there are no further questions, we ask the support to reverse the decision of the BIA and hold that Mr. Winnipeg has not committed a crime of violence. I do need to ask one other quick question, Mr. Butcher. As I understand it, Petitioner has had removal deferred because of conditions in the Democratic Republic of Congo. What are the stakes, as you all see it, for this decision practically for him now? Yes, Your Honor. So our client would like his green card back. That's why we are making this argument. With his green card, he does not have to apply for work authorizations. He can access some benefits that he would like to access, such as Medicaid, and it will just make his life much more smooth and his transition out of confinement into being a productive member of the society. Is he currently in prison? He is not, Your Honor. Thank you. Thank you. Mr. Bradley, just—I'm sorry, Mr. Butcher, just a moment, please. You know, you today heard some pretty remarkable lawyers, and you held your own with those lawyers. What year are you in? I'm going into my 3L year, Your Honor. Wow. Really impressive. We want to thank you, and we certainly want to thank Professor Hallett, and we want to thank Mobine Chaudhry, Garrett Cunningham, Maxwell Draskovic, and Shayla Harris, who were also on the brief with you. And as always, we want to thank Mr. Newell and the government for a very well-argued appeal. So, thank you. Thank you, Your Honor. The case will be taken under advisement.